WILLIAM L. JONES, AS EXECUTOR, ETC., OF THEODORE BUTLER, DECEASED, APPELLANT, *v.* THEODORE H. BUTLER, RESPONDENT.

*Partnership — when one partner is liable for the capital contributed by his copartner and lost in the business.*

In an action for an accounting, brought by the executor of a deceased partner against the survivor, it appeared that the firm was insolvent. By the articles of copartnership it appeared that the deceased partner had contributed stock estimated to be of the value of $15,775.48, and the other partner, stock estimated to be of the value of $3,363.77. All profits were, by the terms of the copartnership agreement, to be equally divided, and "all losses happening to the said firm, whether from bad debts, depreciation of goods or any other cause or accident, and all expenses of the said business," were to be borne equally.

*Held,* that the plaintiff was entitled to recover from the surviving partner one-half of the sum by which the estimated value of the stock contributed by his testator exceeded that of the stock contributed by the defendant.

APPEAL from a judgment dismissing the complaint herein, entered upon the report of a referee.

*Wm. L. Jones*, in *pro. per.*, for the appellant.

*H. C. Day*, for the respondent.

TALCOTT, P. J.:

This is an action for an accounting brought by the executor of a deceased copartner against the surviving partner.

The copartnership was in the book and stationery business which had been carried on for many years in the city of Buffalo, first by Theodore Butler, deceased, who afterwards took his son, the defendant, Theodore H. Butler, into partnership, and the business was thereafter continued under the copartnership name of "Theodore Butler & Son." Written articles of copartnership were executed from time to time between the parties, which provided that each party should put in as capital the amount of his then interest in the stock of goods, and other assets on hand, which were, though old and shop-worn, inventoried for the purpose of specifying the amount of capital advanced by each party at their cost price. On the 21st of February, 1873, the parties executed articles of copartnership, in which were set forth the terms of their copartnership, which it was provided should commence on the 1st day of February, 1873, and should continue for the period of three years. Each party thereby agreeing to contribute to the funds of the copartnership as follows:

Theodore Butler, stock at $13,775.48, and Theodore H. Butler, stock at $3,363.77, the same being the amount of stock, notes, accounts and cash on hand on the 1st day of February, 1873.

It was further provided by the said articles as follows: "All profits which may accrue to the said copartnership shall be divided equally, and all losses happening to the said firm, whether from bad debts, depreciation of goods, or any other cause or accident, and all expenses of the said business shall be borne by the said partners equally." And it was further provided that neither party should be entitled to interest on his share of the capital invested, and that "at the expiration of the aforesaid term, or earlier dissolution of this copartnership, if the said parties, or their legal representatives, cannot agree in the division of stock then on hand, the whole copartnership effects, except the debts due the firm, shall be sold at public auction, at which both parties shall be at liberty to bid and

purchase, like other individuals, and the proceeds shall be divided after paying the debts of the firm as per capital invested."

The business of the firm was carried on for nearly three months after the time fixed for the expiration of the partnership, without the execution of any new articles, when the senior partner died on the 26th of April, 1876. The copartnership was in straightened circumstances when the senior member died, and was probably insolvent at that time. After the decease of the senior partner the survivor continued the business, closing out the stock and collecting the accounts due the firm, and paying off the indebtedness as fast as possible. No letters testamentary were issued until some ten months after the decease of the senior partner, and the survivor made purchases of some new goods, such as were necessary to facilitate the sale of the old stock in the name of the firm.

After letters testamentary were issued to the plaintiff, some misunderstanding seems to have arisen between the plaintiff and the survivor, and the plaintiff, as executor, on the 24th of February, 1877, gave the defendant notice that he could not consent to have the defendant continue to carry on the business of the late firm, and demanded an account of the partnership property and effects of the late firm; and on the 26th of February, 1877, the surviving partner sold the entire balance of the stock of goods, by private sale, to one S. S. Guthrie, for the sum of $2,300.

This suit was commenced by the executor of the senior partner for an accounting and settlement of the affairs of the said copartnership. Such an accounting has been had, and is rendered by the defendant in different schedules under appropriate headings. The plaintiff neither surcharges nor falsifies any of such accounts, and takes no exception thereto.

The referee finds, on a summary of the whole accounts, that the whole amount of the assets of the said copartnership has been applied by the defendant in payment of the debts of the firm and the expenses of closing up the copartnership, and there still remained unpaid of the indebtedness of the said copartnership the sum of $160, and reports that the defendant is entitled to a judgment against the plaintiff for a dismissal of the complaint, and for the costs of the action to be adjusted, and a judgment has been entered accordingly.

It was stipulated between the parties before a referee, that Theodore H. Butler's services, in closing up the copartnership business, were of the value of $2,000, subject to the legal objection that a surviving partner is not entitled to compensation for his services in winding up the copartnership business. This is the general rule; and, as we understand the case, no allowance was made in this case to the surviving partner for his services in this respect. Amongst the schedules of account rendered, it was shown what amount of new goods had been purchased by the defendant after the death of the senior partner, for the purpose of facilitating the disposition of the old stock, together with an account of the sales thereof, showing a profit made on such sales of about $1,000, which had gone into the general funds of the partnership and been used by the surviving partner in paying the debts of the firm, and in the expenses of carrying on the business. It is a rule of law that death puts an end to the authority of the surviving partners to carry on for the future the partnership business. It is, therefore, the duty of the surviving partners to cease altogether from carrying on the trade or business thereof; and if they act otherwise, and continue the trade or business, it is at their own risk, and they will be liable at the option of the representatives of the deceased partner to account for the profits made thereby, or to be charged with the deceased partner's share of the surplus besides bearing all the losses. (Story on Partnership, § 343.)

This case, however, resulted in no surplus in which the deceased was entitled to share, and the allowance to his estate of the profit arising from the continuance of the trade, so far as it was continued, was the most beneficial disposition of the matter which could have been made.

It is, however, insisted that the referee erred in the judgment he has directed, in this, that he did not allow the plaintiff to recover judgment against the defendant for the proportionate value of the loss which was sustained by the concern from the depreciation of their stock in trade, and it seems that herein the referee erred.

The articles of copartnership provide that the profits were to be equally divided, and the losses happening to said firm, whether from bad debts, depreciation of goods, or any other cause or accident, and all the expenses of the business were to be equally borne.

The losses in this case probably happened from a depreciation of the old stock on hand and from some bad debts. The result of the judgment ordered by the referee is to throw the largest portion of the loss upon the senior partner, instead of dividing it equally between the two. It is to be assumed that so far as the loss was in consequence of the depreciation of the stock, it was equally distributed upon the stock contributed by both parties.

Although it is said that partners contributing capital put the amount contributed by each of them at risk, and if it be lost there is no remedy, and although this may be correct as to third persons, yet, as between the parties themselves, the agreement between them must govern.

Here was an agreement that although each party contributed the capital in different proportions, yet they were to share equally in the profits and in the losses. Here has been a loss of the whole capital. That loss, therefore, is to be equally divided between the parties, otherwise the partnership agreement is, to use the expression quoted in some of the authorities cited, construed against the party advancing the largest share of the capital, as if it was upon the principle, "heads I win, tails you lose."

We think, therefore, that under such an agreement, requiring that each party should bear an equal share of the losses, the loss of capital is to be distributed equally between the two; and that, if in taking an account, it appears that one party has lost more capital than the other, the only way to make an equal distribution of the loss is by charging the other with an amount which will make the losses equal. (*Nowell* v. *Nowell*, L. R., 7 Eq. Cases, 538; *Whitcomb* v. *Converse*, 119 Mass., 38; *Neudecker* v. *Kohlberg*, 3 Daly, 407; *Raymond* v. *Putnam*, 44 N. H., 160.) Assuming the valuation at which the goods belonging to each party was estimated at the time of forming the copartnership, *i. e.*, at the cost prices, the loss of the senior partner was $15,775.48 and that of the survivor $3,363.77. These prices at which the goods were estimated or valued, at the formation of the partnership, was probably resorted to as mere matter of convenience, and do not represent the actual value at that time. Yet having been estimated and agreed upon at the time, the amounts for the purpose of a liquidation of the partnership affairs, and in view of the probable impossibility at this time of ascertaining

the actual value of the goods contributed by each party, must be assumed to be correct, and to actually represent the interest of each partner in the capital of the firm.

Under the agreement, the executor of the deceased partner can require of the survivor to be indemnified for one-half of the loss sustained by the estate of the deceased, for his proportion of the loss sustained by the loss of the capital of the concern, and in our judgment the executor is entitled to be allowed for one-half of the amount lost by the estate of the deceased in excess of the amount lost by the survivor, in order to make an equal division between the parties of the losses sustained by the copartnership. The judgment rendered in the case, however, seems to wholly ignore that provision of the contract which provides not only that all *profits*, but that all *losses* shall be borne by the parties equally. By reason of the failure of the referee to apportion the losses equally between the partners, we think the judgment is erroneous, and must be reversed and a new trial ordered.

SMITH and HARDIN, JJ., concurred.

Judgment reversed and new trial ordered before another referee, costs to abide event.